**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
In re:                                                     :
                                                           :   CHAPTER 15
ATLAS SHIPPING A/S and ATLAS BULK                          :
SHIPPING AS, Danish Corporations,                          :   Case No: 09-10314
                                                           :   Jointly Administered
              Bankrupts in Foreign Proceedings             :
                                                           :
------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF MOTION
## REQUESTING FURTHER ASSISTANCE AND ADDITIONAL RELIEF

The Foreign Trustee, Lisa Bo Larsen, as the Foreign Representative (the "Trustee") by her attorneys, Nicoletti, Hornig & Sweeney, brings this motion requesting post- recognition further assistance and additional relief. Pursuant to 11 U.S.C. § 1509, § 1525 and § 1527, this Court should extend comity to recognize and implement relevant Danish Insolvency Law regarding attachments and order all funds subject to attachment and/or garnishment turned over to the Foreign Trustee. Pursuant to 11 U.S.C. § 1507 and § 1521 (a) and (b) this Court should order all property of the Debtor within United States jurisdiction entrusted to the Foreign Representative as "additional relief" under U.S. law, "consistent with comity."

### POINT I

### AS A MATTER OF COMITY TO THE DANISH INSOLVENCY PROCEEDING THE COURT SHOULD ORDER THE FUNDS SUBJECT TO MARITIME ATTACHMENTS ENTRUSTED TO THE FOREIGN TRUSTEE

Pursuant to § 1517(a), this Court has now recognized the Danish bankruptcy proceedings as a foreign main proceeding and has recognized the Trustee-Petitioner as

1

Atlas' foreign representative. See *Order Granting Recognition of a Foreign Main Proceeding* (Feb. 25, 2009). No objections were made to either of these recognitions.

The stated purpose of Chapter 15 is to promote cooperation in cross-border insolvency cases. 11 U.S.C § 1501. Once an entity has commenced bankruptcy proceedings in a foreign jurisdiction then Rule B maritime attachments should be vacated pursuant to principles of comity. *Cunard S.S. Co. v. Salen Reefer Serv. AB*, 773 F.2d 452, 458 (2d Cir. 1985). The Second Circuit in *Cunard* upheld the District Court's discretion to vacate Rule B maritime attachments in light of a foreign bankruptcy proceeding. The Court mentioned in *dicta* that the preferred course of action would have been to bring an ancillary proceeding in the U.S. Bankruptcy Court under section 304. *Cunard* 773 F.2d at 455, 461. (Section 304 has since been superseded by Chapter 15 of the Bankruptcy Code, which is broader and expressly requires cooperation and comity between U.S. courts and those of foreign jurisdictions. 11 U.S.C. § 1501). Atlas, obviously, has commenced that ancillary proceeding.

Under the doctrine of comity, a U.S. court is entitled, as a matter of its discretion, to recognize the legal acts of another nation. The United States Supreme Court has defined comity as "neither a matter of absolute obligation, on the one hand, nor of mere courtesy and goodwill, upon the other. But it is the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws." *Hilton v. Guyot*, 159 U.S. 113, 163-164 (1895).

In the Second Circuit, comity has long been recognized as "especially important in the context of the Bankruptcy Code." *Maxwell Communication Corp. v. Societe Generale* 93 F.3d 1036, 1048 (2d Cir. 1996) (citing to *Cunard S.S. Co. v. Salen Reefer Serv. AB*, 773 F.2d 452, 458 (2d Cir. 1985) and *Victrix Steampship Co., S.A. v. Salen Dry Cargo A.B.*, 825 F.2d 709, 713 (2d Cir. 1987). In both *Cunard and Victrix*, the District Court vacated Rule B maritime attachments against the debtor, despite the lack of legal basis for such vacatur, purely as an extension of comity to ongoing Swedish bankruptcy proceedings and law. *See* Fed. R. Civ. P. Supp. R. E (providing the procedure for vacatur of Rule B attachments); See generally *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty. Ltd*, 460 F.3d 434 (2d Cir. 2006) (stating the recognized grounds for vacutur of Rule B attachments under U.S. law).

Under and pursuant to the Danish Bankruptcy Act, specifically Section 31 thereof, any and all attachments of Atlas' property, whether made before or after December 18, 2008 (the Atlas bankruptcy date) are null and void. See *Letter of Torben Kuld Hansen, Presiding Judge in the Atlas Danish bankruptcy proceeding addressed to The Honorable Martin Glenn* ("Judge Hansen Letter"). The voidance of attachments in Danish bankruptcy is automatic and arises by operation of statutory law. DANISH BANKRUPTCY ACT § 31. It does not require any judgment or court intervention to be effectuated. See *Declaration of Lisa Bo Larsen* (Mar. 3, 2009).

In his letter to Judge Glenn, Presiding Judge Hansen requests comity and specifically asks this Court to recognize and effectuate the Danish Bankruptcy Act "…in order to provide for the orderly and efficient administration of the Atlas estates, and in the interest of international comity…" *Judge Hansen Letter*. Presiding Judge Hansen

3

also specifically requested this Court's recognition and acceptance of self-executing Danish law regarding the dissolution of attachments of Atlas' property. *Id.*

At the February 20, 2009 recognition hearing held herein, the Court tacitly acknowledged that it would entertain a request to extend comity to the nullification of the instant attachments:

> The Court: "I mean, you can go to Denmark and you can – the representatives can initiate whatever actions or procedures are provided for under Danish insolvency law and seek to obtain relief against these creditors in Denmark, if Danish law would nullify the interests that the creditors are claiming to bring back that judgment and seek recognition of the Danish judgment here…" *Hearing Transcript* (Feb. 20, 2009) p. 10, lines 5-11

> \* \* \*

> The Court: "I'm not trying to get you to – if you've got an argument that under Danish law, which I should give comity to, that the attachments are a nullity, that's fine. I'm not ruling against you on the law." *Hearing Transcript* (Feb. 20, 2009) p. 22 lines 11-14

Given the Danish Bankruptcy Court's explicit request to this Court for comity and recognition of Danish law dissolving attachments, and since such attachments are voided not by judgment or decree, but by operation of statute, this Court should grant comity and release the attached funds to the Trustee.

Here, as in *Cunard*, the Danish Bankruptcy proceeding involves consolidation of judicial resources before a single forum, which is plainly the most efficient means of systematically managing the Atlas estate's assets. Virtually all of those assets, aside from these disputed funds, are located in Denmark, and in the present action no U.S. citizens or business entities are involved. It is wholly in accord with U.S. policy to stay actions and vacate attachments against debtors due to their ongoing bankruptcy proceedings in Copenhagen. See *Cunard*, 773 F.2d at 458.

4

Chapter 15 expressly provides for cooperation between foreign courts, trustees, and U.S. courts in cross-border insolvency cases. 11 U.S.C. § 1501. "The considerations for post-recognition relief remain flexible and pragmatic in order to foster comity and cooperation in appropriate cases." *In re Bear Stearns,* 389 B.R. 325, 333 (S.D.N.Y. 2008).

Furthermore, § 1525 mandates that "consistent with § 1501, the court shall cooperate to the maximum extent possible with a foreign court or a foreign representative, either directly or through the trustee." 11 U.S.C. § 1525. Pursuant to the requirement of § 1525, § 1527 enumerates some forms of cooperation, including: (1) appointment of a person or body, including an examiner, to act at the direction of the court; (2) communication of information by any means considered appropriate by the court; (3) coordination of the administration and supervision of the debtor's assets and affairs; (4) approval or implementation of agreements concerning the coordination of proceedings; and (5) coordination of concurrent proceedings regarding the same debtor. 11 U.S.C. § 1527. See *Fogerty v. Condor Guaranty, Inc.* 2009 WL 321627, at *3 fn.6 (S.D.Miss. Feb. 9, 2009)

As cited by this Court at the February 20, 2009 recognition hearing, *Fogerty* stands for the principle that as an alternative to seeking avoidance under U.S. law, the Foreign Representative could obtain relief in the foreign main proceeding and then seek recognition of any such relief in the United States. *Fogerty,.* 2009 WL 321627, at *3 fn.6. As it is clear that the Danish proceedings are entitled to comity, it would be in complete accordance with Chapter 15's demand for maximum cooperation to recognize Danish bankruptcy law regarding the subject assets.

5

The Danish bankruptcy law is starkly clear - no attachment, either pre- or post-petition, is entitled to any legal recognition or force. DANISH BANKRUPTCY ACT § 31. The post-petition attachments are void *ab initio*, and the pre-petition attachments were nullified upon declaration of bankruptcy. DANISH BANKRUPTCY ACT § 31, See *Declaration of Lisa Bo Larsen* (Mar. 3, 2009); see also *Judge Hansen Letter*. While *Fogerty* contemplated recognition of a foreign judgment, here, the Danish law on avoidance is statutory and need not be (and would not be) reduced to a judgment by a Danish court. Accordingly, the avoidance relief under the self-executing Danish law is entitled to recognition on par with a foreign judgment, as a matter of comity.

As Judge Sweet noted in *Cunard*, quoting Judge Learned Hand, "[T]he court [in Hilton v. Guyot] certainly did not mean to hold that an American court was to recognize no obligations or duties arising elsewhere until it appeared that the sovereign of the locus reciprocally recognized similar obligations existing here. *That doctrine I am happy to say is not part of American jurisprudence.*" (emphasis in original) *Cunard Steamship Co. Ltd. v. Salen Reefer Svcs. A.B.*, 49 B.R. 614, 617 (S.D.N.Y. 1985) *aff'd.* 773 F.2d 452 (2d Cir. 1985) (quoting, *In re Aktiebolaget Kreuger & Toll*, 20 F.Supp. 964, 969 (S.D.N.Y. 1937)). In accordance with this basic underpinning of comity, Judge Sweet found the jurisdiction of the Swedish court was undisputed and that the Swedish ruling would "facilitate the orderly and systematic distribution of the assets." *Id.*

No compelling argument militates in favor of an alternative, "piecemeal" distribution, or an indeterminate, trans-oceanic separation of the assets. The imperative of 11 U.S.C. § 1501 and § 1525 requires cooperation to the fullest extent to assist the orderly administration of the estate and efficient dispensation of assets by the foreign

6

court. The foreign plaintiffs are fully within their rights to proceed as creditors against the debtors' assets before the Danish proceeding under applicable Danish law. Accordingly, this Court should, in its discretion and pursuant to § 1525 and § 1527, exercise comity, recognize the applicable Danish law, and order the attachments nullified. To effectuate a centralized, orderly and equitable disbursement of assets to the creditors the attached funds (currently held in the Nicoletti Hornig & Sweeney Trust Acount), should be entrusted to the Trustee for its dispensation as part of the bankrupt estate under Danish law.

## POINT II

### THIS COURT'S AUTHORITY TO ORDER ENTRUSTMENT OF THE DEBTOR'S U.S. ASSETS TO THE TRUSTEE IS NOT CIRCUMSCRIBED BY ANY PROVISIONS OF CHAPTER 15

A. This Court's Discretionary Power to Recognize Danish Law Is Not Limited by Any Provisions of Chapter 15

The purpose of Chapter 15 is to "provide effective mechanisms for dealing with cases of cross-border insolvency..." 11 U.S.C. § 1501 (a) As the U.S. incorporation of the UNCITRAL Model Law, Chapter 15 is designed to "encourage cooperation between the United States and foreign countries with respect to transnational insolvency cases." Collier on Bankruptcy ¶1501.01 (Alan N. Resnick & Henry J. Sommer, eds. 15 ed. rev 2005). Indeed, it is the only chapter in the Bankruptcy Code that has an express statement of purpose, and a clear mandate that courts must recognize its international character. Collier ¶ 1501-1505; See 11 U.S.C. § 1501

Once a foreign proceeding is recognized then the subsequent "relief is largely discretionary and turns on subjective factors that embody principles of comity." *In re*

7

*Bear Stearns,* 389 B.R. 325, 333 (S.D.N.Y. 2008). "Chapter 15 then envelops its mechanism for ancillary relief in a broader structure that mandates cooperation with foreign courts and foreign representatives and coordination of multiple proceedings involving a common debtor." Collier ¶ 1501-4. Section 1509 further emphasizes that comity is the driving force of Chapter 15. 11 U.S.C. §1509(a)(3) ("a court in the United States *shall* grant comity or cooperation to the foreign representative) (emphasis added). As the 'prime mover' of Chapter 15, comity should be exercised to aid a foreign court's bankruptcy proceedings, as long as those proceedings are not manifestly contrary to public policy of the United States. 11 U.S.C. § 1506. The "manifestly contrary" language of § 1506 only implicates policies of serious constitutional import. *See* Collier ¶ 1506-1; *See also* Guide to Enactment of the UNCITRAL Model Law on Cross-Border Insolvency Law ¶87, U.N. Gen. Ass., UNCITRAL 30th Sess. U.N. Doc. A/CN.91442 (1997) (hereafter "UN Guide"). As illustration, the District Court found that a foreign Canadian proceeding's denial of the right to a jury, a bedrock Constitutional right guaranteed by the Sixth Amendment, was not sufficiently contrary to U.S. policy to merit application of the §1506 limitation. *In re Ephedra Products Liability Litigation* 349 B.R. 333 (S.D.N.Y. 2006).

Certainly narrower in its scope, the relevant limitation provision of § 1521(a)(7), does no more than reserve the discretionary avoidance power of the Trustee under U.S. law. 11. U.S.C. § 1507. It has no bearing on the discretionary power of the presiding Court's ability to exercise comity. *Fogerty v. Condor Guaranty, Inc.* 2009 WL 321627, at *3 fn.6 (S.D.Miss. Feb. 9, 2009). As discussed *supra*, in *Fogerty*, the court recognized that while the Trustee's avoidance power was exempt under Chapter 15, the

8

court could recognize a foreign proceeding's relief, effectuating the same remedy, as a matter of comity. Chapter 15's intent to foster comity by encouraging cross-border communication is expressed in §§ 1525 – 1527. *See* UN Guide ¶¶ 173-74. This statutory authority creates a clear, convenient avenue of access and information, illustrated by the *Fogerty* court's recommendation for trans-judicial cooperation and recognition. By communicating with the foreign court directly and/or the foreign representative the Court is thus equipped to extend comity towards the Danish court and the Danish Bankruptcy Act. See *In re Britannia Bulkers Order*, No. 08-15187 (Bankr. S.D..N.Y Jan. 30, 2009).

Here, where the foreign representative requests that this court extend comity to implement the self-executing provisions of the governing Danish Bankruptcy Act, no U.S. constitutional principles are implicated. As in the recent *Britannia Bulkers* Chapter 15 Petition before this Court a few months ago (a mirror image of the case at bar), the subject attachments are merely products of a unique jurisdictional facet of U.S. admiralty law and procedure,[1] and involve no U.S. creditors. All the plaintiffs are foreign entities that have availed themselves of the U.S. courts for the sole purpose of utilizing this extraordinary device. As Judge Gerber explicitly recognized in the *Britannia* Bulkers Order, under Chapter 15 the Danish Bankruptcy law was entitled to comity. With no U.S. citizens or interests implicated, all funds garnished by pre-petition maritime attachments

---

[1] A Rule B maritime attachment is an entirely unique device, without clear analogy to any other federal or state law. It is an ex parte attachment meant to acquire jurisdiction in an in personam action within the mobile and global context of admiralty. WILLIAM TETLEY, MARITIME LIENS AND CLAIMS 939 (Blais 2d ed 1998) A Rule B attachment is not a maritime lien See *Trans-Tec Asia v. M/V Harmony Container*, 518 F.3d 1120, 1128 (9th Cir. 2008) (defining maritime lien, noting that they are only enforceable in an action *in rem*). The district courts have refused to "reduce maritime attachment to nothing more than a security lien," as "it is crystal clear that historical purpose of the writ of foreign attachment is to compel the respondent's appearance. Although an incidental purpose thereof is to supply the libellant with security, this objective can only be obtained as an adjunct to jurisdiction." *East Asiatic Co. Ltd. v. Indomar Ltd.* 422 F. Supp.1 1335, 1339 (S.D.N.Y. 1976). See *Cordoba Shipping Co. Ltd. v. Maro Shipping Ltd.*, 494 F.Supp. 183, 185 (D. Conn. 1980) ("The procedure under these rules [Rule B] can furnish security, but only incidental to an attempt to acquire *quasi in rem* jurisdiction).

were duly turned over to the foreign representative for Danish administration without requiring any further filing under any other chapter of Title 11. *Britannia Bulkers Order*, No. 08-15187 (Bankr. S.D..N.Y Jan. 30, 2009).

Both the foreign representative and the presiding judge of the Danish proceedings, in accordance with Chapter 15's authorization to communicate have now written, appraising this Court of the relevant self-executing Danish law. Following the *Fogerty* rationale and the decision in *Britannia Bulkers*, this Court should recognize and implement the Danish proceeding's law in a pure exercise of comity, regardless of the restrictions placed upon the Trustee's procedural powers in the American Chapter 15 proceedings. Thus, by so aiding the fellow Danish court's efficient management of the Atlas estate, the purpose of Chapter 15 would be fully realized.

B. This Court, Under United States Law, Should Order Additional Assistance as a Matter of Equity and Consistent With Comity Pursuant to 11 U.S.C. § 1507 and § 1520

Upon recognition, Chapter 15 further provides for "additional assistance" under United States law, not as a direct extension, but "consistent with" the principles of comity to reasonably ensure (1) just treatment of all holders of claims against or interest in the debtor's property; (2) protection of claim holders in the United States against prejudice and inconvenience in the processing of claims in such foreign proceeding; (3) prevention of preferential or fraudulent dispositions of property of the debtor; (4) distribution of proceeds of the debtor's property substantially in accordance with the order prescribed by this title; and (5) if appropriate, the provision of an opportunity for a fresh start for the individual that such foreign proceeding concerns. 11 U.S.C. § 1507. Although this

10

provision mirrors the prior § 304(c), comity was removed as a factor and written into the section's preface to emphasize its "overarching importance." Norton Bankr. Law & Practice ¶ 154:17 (William L. Norton Jr. & William L Norton III, eds. 3d ed. 2008).

Consistent with these considerations for "additional assistance" and with the comity required by Chapter 15 would be the additional relief requested by the Trustee pursuant to § 1521, "entrusting the realization of all or part of the debtor's assets within the territorial jurisdiction of the United States to the foreign representative or another person, including an examiner, authorized by the court" and to "... entrust the distribution of all or part of the debtor's assets located in the United States to the foreign representative or another, including an examiner, authorized by the court, provided that the court is satisfied that the interests of the creditors in the United States are sufficiently protected." 11 U.S.C. §1521(a)(5) and (b) . The limitation on avoidance powers of the Trustee is not applicable to this entrustment power, nor were the analogous "turnover powers" in the bankruptcy code exempted from Chapter 15. (§1521(a)(7), §542, §543) The transfers need not be avoided by U.S. law to effectuate entrustment of the actual funds to the estate. See *In re Delancey* 77 B.R. 424 (Bankr. S.D.N.Y. 1987) (recognizing in its holdings that turning over of the actual funds was separate from the trustee's avoidance of the lien).

Under the similar § 542 and § 543 provisions of the U.S. Bankruptcy Code entities and custodians, in possession of any of the debtor's property must turn over any such assets to the estate for management by the Trustee, subject to certain exceptions inapplicable to the situation here. 11 U.S.C. § 542, 543.

In *In re Adomah*, 340 B.R. 453, 459 (Bankr. S.D.N.Y. 2006)., the garnishee bank was required, concededly in a non-Chapter 15 matter, to relinquish funds it had garnished pursuant to a valid pre-petition restraining notice served by a judgment creditor by operation of the § 542 turnover provision.

Similarly, in *Delancey*, the court found that an inchoate prejudgment attachment made pursuant to state law prior to the bankruptcy did not transfer title. The attached assets were therefore ordered turned over to the trustee pursuant to § 543. *Delancey*, 77 B.R. at 428-429.

Here, the *ex parte*, prejudgment, pre-petition maritime attachments are entirely similar in execution, scope and effect as the garnishments made in *Adomah* and the attachments in *Delancey*. The bank garnishments in *Adomah* were made prepetition, pursuant to a validly issued restraining notice. The bank was found liable for damages incurred by its delay in turning over the funds and the court found that the restraining notices became "void and of no effect" upon the filing of bankruptcy. *Adomah* 340 B.R. at 458.

These maritime attachments, like the prejudgment attachment in *Delancey*, transfer no title, and are made only in anticipation of a future award. *Delancy* 77 B.R. at 428-429. Unlike *Delancey*, whose attachment was issued by the same court that would have issued the award, the maritime plaintiffs' anticipated awards will be rendered by foreign arbitrations with no oversight or relationship to the United States courts. The only link between the foreign arbitrations and the disputed funds is the provisional Rule B device itself, creating a much more tenuous basis for any "judicial lien."

12

Furthermore, as Chapter 15 is the applicable law and the Danish proceedings have already been recognized, the Trustee is accordingly entitled to discretionary relief. Chapter 15's rationale for additional relief mandates that comity be the central consideration. Norton Bankr. Law & Practice ¶154:17 (citing House Rep. No. 109-31, Pt. 1, 109th Cong. 1st Sess 109 (2005)). In light of these plaintiffs' fragile ties to the U.S., additional relief is clearly appropriate.

Moreover, little prejudice would result if such relief is ordered, as the attachments these plaintiffs possess, like the liens in *Delancey*, transfer no title interest. Even assuming the plaintiffs are now elevated to the status of lien creditors, the attachments can no longer be executed upon by virtue of the automatic stay, pursuant to § 1520 and § 362. Notwithstanding, the Rule B plaintiffs' loss of whatever priority status (if any) they may arguably possess (which is denied), these foreign plaintiffs can partake in the Danish distribution and are entitled to make any arguments or assert any contentions for priority before the Danish court. In weighing the matter, it would clearly cause greater prejudice to have no recovery on these assets for some indeterminate time, or piecemeal administration, rather than a timely, orderly, and fair dispensation, along with all other creditors, in accordance with the Danish bankruptcy procedure.

If the 'additional relief' is not granted, an indefinite maintenance of the status quo would be created, whereby these creditors cannot execute, nor can the Trustee fully evaluate the debtor's assets and dispense them fairly to the creditors. The Trustee would be forced to engage in time consuming and costly legal proceedings and litigation in the United States to resolve the matter (with no guarantee of such resolution). Further actions in the United States would distract from the principal work of estate

13

administration in Denmark, expend money that would otherwise be part of the estate for disbursement to creditors, and would delay or prevent efficient consolidation in a single Danish proceeding. If further U.S. proceedings are required, the plaintiff-creditors will have successfully drawn the Trustee into a legal diversion, especially in light of the fact that the disputed funds were electronically captured while coursing through the U.S. banking system's cyberspace network. Atlas did not maintain any of these assets in the United States –in effect it is being penalized for having conducted some of its business in U.S. dollars.

As the Supreme Court has stated, "the object of bankruptcy laws is the equitable distribution of the debtor's assets amongst his creditors" *Kuehner v. Irving Trust Co.* 299 U.S. 445, 451 (1937).; See also *Williams v. U.S. Fidelity & Guaranty Co.* 239 U.S. 549, 554-55 (1915) ("It is the purpose of the bankrupt act to convert the assets of the bankrupt into cash for distribution among creditors, and then to relieve the honest debtor from the weight of oppressive indebtedness, and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes"). If the assets remain in the U.S. or are delayed from being fairly distributed with the rest of the estate then the Danish proceedings would be thwarted in fulfilling this fundamental purpose.

Therefore, this Court should order entrustment of the disputed funds to the Trustee as "additional relief" pursuant to United States law and Chapter 15.

## CONCLUSION

For the foregoing reasons, the Court should recognize Danish law and proceedings and order the attachments voided and entrust the assets held in the U.S. counsel's trust account to the Foreign Trustee as a matter of comity.

Alternatively, the Court should order the assets held in the U.S. counsel's trust account turned over to the Foreign Trustee as "additional relief" pursuant to Chapter 15 of the U.S. Bankruptcy Code.

Dated: New York, New York
       March 4, 2009

> Yours, etc.
>
> **NICOLETTI HORNIG & SWEENEY**
> Attorneys for Trustee
>
> By: _____
>     James F. Sweeney (JFS 7745)
>     88 Pine Street -7th Floor
>     New York, New York 10005
>     (212) 220-3830
>     Our File No.: 00000878JFS

To:

Claurisse Ann Campanale-Orozco
Tisdale Law Offices, LLC
*Attorneys for Dormin Shipping S.A.,*
*New Era Shipping*
24 West 40th Street
17th Floor
New York, NY 10018
Email:corozco@tisdale-law.com

15

James A. Saville, Jr.
Hill, Rivkins & Hayden, L.L.P.
*Attorneys for Cargill International S.A*
45 Broadway
Suite 1500
New York, NY 10006
Email: 'jsaville@hillrivkins.com'


Garth S. Wolfson
*Attorneys for Amanda C. Navigation Company LLC,*
*Sertio Shipping Co. Ltd.*
*Trans Pacific Carriers Co. Ltd*
Mahoney & Keane, LLP
11 Hanover Square
10th Floor
New York, NY
Email: gwolfson@mahoneykeane.com


Thomas Hunt Belknap, Jr
Blank Rome LLP
*Attorneys for Allied Maritime Inc.*
The Chrysler Building
405 Lexington Avenue
New York, NY 10174
Email: tbelknap@BlankRome.com


Peter Skoufalos
Brown Gavalas & Fromm LLP
*Attorneys for Malena Shipping Company*
355 Lexington Avenue
New York, NY 10017
Email: pskoufalos@browngavalas.com


T:\NEichler\000000-878\Bankr Brief (Mar. 4, 2009)(final).doc