# EXHIBIT B

```
 1                    UNITED STATES BANKRUPTCY COURT
                      SOUTHERN DISTRICT OF NEW YORK
 2
                                   .    Chapter 15
 3    IN RE:                        .
                                    .    Case No. 09-10315(MG)
 4                                  .            09-10314(MG)
      ATLAS BULK SHIPPING, AS,
 5    ET AL,
                                    .    New York, New York
 6                     Debtors.  .    Friday, February 20, 2009
      . . . . . . . . . . .   . . . .    10:02 a.m.
 7
          TRANSCRIPT OF HEARING ON RECOGNITION OF FOREIGN PROCEEDING
 8                 BEFORE THE HONORABLE MARTIN GLENN
                   UNITED STATES BANKRUPTCY JUDGE
 9
      APPEARANCES:
10
      For the Debtors:          James F. Sweeney, Esq.
11                              NICOLETTI, HORNIG & SWEENEY
                                Wall Street Plaza
12                              80 Pine Street
                                New York, NY  10005
13
      For Allied Maritime,
14    et al:                    Jeremy J.O. Harwood, Esq.
                                BLANK ROME, LLP
15                              The Chrysler Building
                                405 Lexington Avenue
16                              New York, NY  10174

17
      (Appearances Continued)
18
19    Audio Operator:          Electronically Recorded
                               by Stacey Hibbert, ECRO
20
      Transcription Company:   Rand Reporting & Transcription, LLC
21                             80 Broad Street, Fifth Floor
                               New York, New York 10004
22                             (212) 504-2919
                               www.randreporting.com
23

24    Proceedings recorded by electronic sound recording, transcript
      produced by transcription service.
25
```

```
1    APPEARANCES:   (Continued)

2    For Molina Shipping:           Peter Scoufalos, Esq.
                                    BROWN, GAVALAS & FROMM, LLP
3                                   355 Lexington Avenue
                                    New York, NY   10017
4
     For Dorman Shipping and
5    New Era Shipping:              Thomas L. Tisdale, Esq.
     (Via telephone)                TISDALE LAW OFFICES, LLC
6                                   10 Spruce Street
                                    Southport, CT  06890
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

3

1        (Proceedings commence at 10:02 a.m.)

2            THE COURT:  Please be seated.

3            All right.  We're here in <u>Atlas Shipping</u>, which is

4    Number 09-10314 and 09-10315.  Counsel, please make your

5    appearances.

6            MR. SWEENEY:  Yes.  James Sweeney for Atlas Shipping

7    and Atlas Bulk Shipping from the firm of Nicoletti, Hornig &

8    Sweeney.

9            THE COURT:  Thank you.

10           MR. HARWOOD:  Good morning, Your Honor.  Jeremy

11   Harwood from Blank Rome for Allied Maritime, which is one of

12   the creditors, as well as Peninsula and Pine Lights Shipping

13   (phonetic).

14           THE COURT:  Thank you, Mr. Harwood.

15           MR. SKOUFALOS:  Peter Skoufalos representing --

16           THE COURT:  If you're going to appear, you need to

17   come up.

18           MR. SKOUFALOS:  Yes, Your Honor.

19           THE COURT:  You can't sit in the back of the room.

20           MR. SKOUFALOS:  (Indiscernible).

21           THE COURT:  Could you come up to the microphone and

22   make your appearance in the microphone?  Anybody who's making

23   an appearance needs to be in front of the rail.

24           MR. SKOUFALOS:  Your Honor, I'm Peter Skoufalos

25   representing the creditor Molina Shipping (phonetic).

 1          THE COURT:  Thank you.  Anyone else?  Is someone on

 2   the phone?

 3          MR. TISDALE:  Yes, Your Honor.  This is Thomas Tisdale

 4   of the Tisdale Law Offices representing Dorman Shipping and New

 5   Era Shipping.

 6          THE COURT:  All right.  Thank you.

 7          All right.  First, there was filed a motion for joint

 8   administration.  We didn't take that up before.  That motion is

 9   granted.

10          MR. SWEENEY:  Thank you, Your Honor.

11          THE COURT:  All right.  Mr. Sweeney?

12          MR. SWEENEY:  Thank you, Your Honor.

13          We represent the trustee Lisa Bow Larson (phonetic),

14   who is here today with us from Copenhagen.  And we seek the

15   assistance of this Court pursuant to Section 1501(b) of the

16   Bankruptcy Code.

17          The debtors here, which are Atlas Bulk Shipping and

18   Atlas Shipping, if I can just collectively refer to them as

19   Atlas, filed for bankruptcy protection in the courts in

20   Copenhagen, Denmark, pursuant to Danish bankruptcy law.

21   Copenhagen is where Atlas has the center of its main interests,

22   and the Danish Court there is a court of competent

23   jurisdiction, given the fact that the Atlas entities were

24   indeed headquartered in Copenhagen.

25          The petition was filed December 17, 2008, and was --

1    and the bankruptcy was declared the following day.  Thereafter,

2    Ms. Larson was duly appointed as one of the trustees.  Given

3    the fact that significant Atlas assets were located in this

4    district, and had been attached and restrained pursuant to

5    Supplemental Rule B attachments issued by the Southern District

6    of New York, the trustee brought this petition in these

7    proceedings pursuant to Chapter 15 on January 23, 2009.

8            In this proceeding, the Court conducted a hearing on

9    January 27 concerning the trustee's application for interim

10   Section 1519 relief.  The Court granted that relief and issued

11   an order temporarily staying all litigation involving Atlas,

12   and directing the garnishee banks and those parties to whom the

13   Rule B orders of attachment were issued in favor of those

14   parties.  The relief was granted under 1519 by the Court, and

15   all restrained and attached funds were to be turned over to my

16   firm to be held in trust.  To the best of our knowledge, Your

17   Honor, that order has now been complied with.

18           THE COURT:  How much money have you -- has been turned

19   over?

20           MR. SWEENEY:  It's some -- it's $4.3 million and

21   change, Your Honor.  I can give you -- we have a --

22           THE COURT:  That's okay.

23           MR. SWEENEY:  -- a spreadsheet with the exact

24   accounting details.

25           THE COURT:  And I take it -- have you shared the

6

1    spreadsheet with the other counsel for the creditors?

2          MR. SWEENEY:  I have not, but we have copies here

3    available.

4          THE COURT:  Okay.

5          MR. SWEENEY:  And the banks, in remitting to our trust

6    account, also gave details of what they had received and

7    restrained.

8          Accordingly, the trustee now seeks recognition of the

9    Danish bankruptcy proceeding as a foreign main proceeding

10   within the meaning of Section 1502.  Pursuant to Section 1507,

11   the Danish proceeding will afford, first, just treatment of all

12   holders of claims against or interests in the debtors'

13   property, protection of claim holders in the United States

14   against prejudice and inconvenience in the processing of claims

15   in the Danish proceedings, prevention of preferential or

16   fraudulent dispositions of property of the debtor, distribution

17   of proceeds of the debtors' property substantially in

18   accordance with the order prescribed by Chapter 15, and if

19   appropriate, the provision of an opportunity for a fresh start

20   for an individual which is not really concerned here.

21         Pursuant to 1517, Your Honor, this Court should

22   therefore enter an order recognizing the Atlas bankruptcy

23   proceeding in Denmark because it is indeed a foreign main

24   proceeding within the meaning of 1502, because Lisa Larson has

25   been appointed trustee and she's here today, and she's brought

1   this petition, and because the petition itself meets all of the

2   Section 1515 requirements.

3         In addition, and under and pursuant to Section 1521,

4   and so as to protect the assets of Atlas and the interests of

5   all creditors -- all creditors, the trustee also asks for

6   relief available under Sections A and B of 1521.

7         Your Honor, we have submitted a great deal of

8   paperwork, including a memorandum on -- for this hearing,

9   together with the declaration of the trustee.  There's two

10   declarations, actually, in the record now.  And we submit that

11   that should suffice to allow the Court to grant this petition.

12   However, of course, Ms. Larson is here should the Court have

13   any questions about the Danish procedure, Danish bankruptcy

14   law, et cetera.

15         THE COURT:  The objections that were filed, no one

16   really contests that this proceeding should be recognized, and

17   the foreign proceeding should be recognized as a foreign main

18   proceeding.  The issue that -- issues that have been raised are

19   with respect to the effect of recognition and what should be

20   included in any relief awarded with respect to attachments that

21   were obtained in New York prior to the interim relief being

22   awarded.

23         Do you want to address that, Mr. Sweeney?

24         MR. SWEENEY:  Yes, Your Honor.

25         We think it's addressed -- we would address that in

1   two ways.  First of all, the automatic stay provision, I think

2   it's 326 --

3              THE COURT:  362 is the automatic stay.

4              MR. SWEENEY:  362.  I'm sorry.  That, under the case

5   law and the case law interpretations of it, and by its own

6   language, would effectively nullify these Rule B attachments.

7              THE COURT:  No, it wouldn't nullify anything.  All it

8   would do is it would prevent any of the creditors from reducing

9   to judgment any claims they have.  I mean, it would basically

10  freeze the situation to whatever existed on the date that --

11  really, that the interim relief was awarded.  But it wouldn't

12  nullify the -- do you have any -- you didn't cite any authority

13  for the proposition that the effect of recognition in the

14  automatic stay would be to nullify attachments that had been

15  obtained prior to your getting relief, did you?  Maybe I missed

16  it.

17             MR. SWEENEY:  Well, Your Honor, we refer the Court to

18  the Adama (phonetic) decision that we did cite here.  And in

19  that case, the -- there was a garnishee bank which was held

20  liable for continuing -- for violating the automatic stay and

21  for continuing a restraining notice against funds.  We are --

22  the automatic stay had been implemented pursuant to the Code.

23             And the Court found:

24             "Upon the filing of the petition," in other words, the

25             implementation of the stay, "the restraining notice

9

1    became void and of no effect."

2    And this was a pre-petition restraining notice.  So

3    the Court found the thrust of it was to reach back and nullify

4    the restraining notice bringing the assets back into the

5    estate.

6    We would also submit, Your Honor, that under

7    principles of comity, which is the underlying principle of

8    Chapter 15, that this Court should recognize the rules in

9    effect in the Danish bankruptcy.

10    THE COURT:  Well, but under 1523(a), the foreign

11    representative, unless he, she or they filed a parallel Chapter

12    11 proceeding, would not have any avoidance powers.  The filing

13    of a Chapter 15 does not give the foreign representative

14    avoidance powers.  That's made explicit in 1523(a).

15    MR. SWEENEY:  Well, one of the objections, Your Honor,

16    was that 1523 -- we hadn't done anything such as that according

17    to 1523(a).  But there's no empowerment to do that unless and

18    until there is recognition of the proceeding as a foreign main

19    --

20    THE COURT:  I understand that.  I understand that.

21    But let's assume I grant recognition.  The issue is what

22    happens to the attachments that were obtained before interim

23    relief was afforded here.

24    Once recognition, the foreign representative, if the

25    representatives chose to file a Chapter 11 proceeding in this

1   court, under 1523(a), they could then bring an avoidance --

2   avoidance actions and they could seek to set aside the

3   attachments that any of the creditors had obtained.  But what's

4   not clear to me, and I want to go back and read Adama, is do

5   you get that relief -- I mean, you can go to Denmark and you

6   can -- the representatives can initiate whatever actions or

7   procedures are provided for under Danish insolvency law and

8   seek to obtain relief against these creditors in Denmark, if

9   Danish law would nullify the interests that the creditors are

10  claiming to bring back that judgment and seek recognition of

11  the Danish judgment here, but let me ask you first.

12          You agree that, absent a Chapter 11 filing by the

13  foreign representatives in this court, they don't have

14  avoidance powers?

15          MR. SWEENEY:  Not according to the case law, Your

16  Honor.  That's what --

17          THE COURT:  Well, what do you do with 1523(a)?

18          MR. SWEENEY:  Well, the --

19          THE COURT:  What's the impact of 1523(a) which says,

20  quote:

21          "Upon recognition of a foreign proceeding, the foreign

22          representative has standing in a case concerning the

23          debtor pending under another chapter of this title to

24          initiate actions under Sections 522, 544, 545," et

25          cetera.  It goes on.

11

1          But it has to be under another chapter of this title,

2    not under Chapter 15.

3          MR. SWEENEY:  Your Honor, in the <u>Adama</u> decision, what

4    happened there was there was a restraining order and a

5    garnishment prior to the petition.  The Court here, this Court

6    said, upon the filing of the petition, implementation of the

7    stay, the restraining notice became void and of no effect.

8          And 15 --

9          THE COURT:  You know, there's a recent case, <u>Fogerty</u>

10   <u>V. Conder Guarantee</u> (phonetic), it's a Southern District of

11   Mississippi case from February 9th, 2009, quote:

12          "In the opinion of the Court, Sections 1521(a)(7) and

13          Section 1523 are intended to exclude all of the

14          avoidance powers specified under either United States

15          or foreign law, unless a Chapter 7 or 11 bankruptcy

16          proceeding is instituted."

17          MR. SWEENEY:  Your Honor, I would submit under <u>Adama</u>

18   it's the automatic stay that reaches back --

19          THE COURT:  Do you have a copy of <u>Adama</u> with you?  I

20   don't have it out here.

21     (Counsel confer.)

22          THE COURT:  My clerk tells me you didn't even cite

23   <u>Adama</u>.

24          MR. SWEENEY:  It's in our hearing petition that we

25   filed yesterday, Your Honor.  It's at Page 4.

12

1    THE COURT:  It's not on ECF?

2    MR. SWEENEY:  It's _In Re_ --

3    THE COURT:  Did you file it on ECF?

4  (Counsel confer.)

5    THE COURT:  You submitted -- don't you use ECF?

6 You're supposed to file electronically.  You think that -- I

7 mean, stuff doesn't show up from a window in my chambers.  I

8 haven't seen it, okay?

9  (All counsel speaking.)

10    THE COURT:  Did you serve it on ECF?

11    UNIDENTIFIED:  (Indiscernible).

12    THE COURT:  Why?

13    UNIDENTIFIED:  We don't have an ECF password for the

14 Bankruptcy Court.

15    THE COURT:  I'm not going to consider it.  Did you

16 serve everybody else?

17    MR. SWEENEY:  Yes.

18    THE COURT:  How?

19    MR. SWEENEY:  Electronically.

20    THE COURT:  Can I see it?  How do you expect me to see

21 things if you don't get them -- deliver a copy to chambers --

22    MR. SWEENEY:  We did, Your Honor.  That's what we did

23 -- copies yesterday afternoon contemporaneous with the service

24 on all parties.

25    THE COURT:  We didn't see it.

1    (Court reviews documents.)

2         THE COURT:  You filed a memorandum, or just the case?

3         MR. SWEENEY:  No, we filed a memorandum as well, Your

4    Honor.

5         THE COURT:  Can I see the memorandum?  You know, I

6    prepare if I get the papers.

7         MR. SWEENEY:  We served --

8         THE COURT:  I prepare when I get papers.

9         MR. SWEENEY:  That's why we gave the courtesy copy to

10   chambers.  I don't know what happened to it.

11   (Court reviews documents.)

12        THE COURT:  I'm not going to read them now.  I'll --

13   is this an extra copy?

14        MR. SWEENEY:  Yes, Your Honor.  I apologize, Your

15   Honor.  We did fully intend --

16        THE COURT:  I pride myself on being prepared, but I

17   have to have papers to prepare.

18        MR. SWEENEY:  Understood.  That's why we submitted

19   them to the Court both at the window and courtesy copies to

20   chambers.

21        THE COURT:  All right.  Go ahead.  Anything else --

22   any other points you want to make?

23        MR. SWEENEY:  No, Your Honor.

24        THE COURT:  All right.  Let me hear from other

25   counsel.

14

1        MR. HARWOOD:  Your Honor, it's --

2        THE COURT:  Go ahead, Mr. Harwood.

3        MR. HARWOOD:  Jeremy Harwood, Your Honor.  It's Mr.

4  Tisdale's cross-motion, so I'll leave it to him.

5        I'd just like to add when he's finished.

6        THE COURT:  All right.  Mr. Tisdale?

7        MR. TISDALE:  Yes, Your Honor.  Thank you very much.

8  And I apologize.  I do not have my papers in front of me.  But

9  going from memory, first of all, I believe Your Honor is

10  exactly correct insofar as the avoidance powers of the Court at

11  this point in time without there being another action filed

12  under this chapter.

13        Moreover, the Adama case to which Mr. Sweeney is

14  referring specifically refers to the fact that the Bankruptcy

15  Court was avoiding a transfer -- was avoiding action being

16  taken under New York State law, and it talked about the fact

17  that New York -- that U.S. bankruptcy law had a superseding

18  effect over New York State law and any rights available under

19  New York State law.

20        In fact, what each of the creditors in this case has

21  done, Dorman Shipping, New Era and all of the other parties

22  represented here, is have filed Rule B attachments, which are

23  traditional maritime, federal maritime remedies.  There is a

24  case which we did not cite because we hadn't seen the Adulla

25  (sic) issue raised, but there was -- I'm sorry, the Adama issue

1   raised, but there is a case called <u>Aurora Shipping v. Fohem</u>

2   (phonetic), which goes from the Second Circuit about 1998 --

3           THE COURT:  Did you cite it in your papers?

4           MR. TISDALE:  I did not, Your Honor, because I had not

5   heard -- seen any reference to the <u>Adama</u> case yet.  But I can

6   have my office send Your Honor that citation.

7           But all that citation merely does is say that U.S.

8   federal maritime law also supersedes any state law remedies

9   which would affect the traditional maritime aspects of the

10  remedy.

11          So what you -- the <u>Adama</u> case effectively is

12  irrelevant and immaterial to the issues which are before Your

13  Honor, which are effectively federal maritime attachment and

14  how they compete with the federal bankruptcy law, and

15  recognition of a Danish proceeding.  I don't think that, at

16  this point, we can recognize any avoidance proceedings or any

17  avoidance requests since there is no parallel action under any

18  other chapter of the Code, and there's been no decisions or

19  judgments rendered from the Danish Bankruptcy Court on this

20  issue.

21          THE COURT:  Anybody else want to be heard?

22          MR. HARWOOD:  Very briefly, Your Honor.

23          I think the -- Jeremy Harwood for the three creditors

24  I identified earlier.  We are in the same position as Mr.

25  Tisdale's client.  We have Rule B attachments.

16

1    There is a schedule of the Rule B creditors, and I

2    think we all stand in the same shoes as Mr. Tisdale's client

3    if, in fact, he was excepted from the reach of this order.  So

4    I think the Court would have to address all the creditors who

5    have Rule B if you granted -- this Court granted Mr. Tisdale's

6    motion.  I think 1521 and 1523, as the Court has described it

7    this morning --

8    THE COURT:  Well, the only issue, it seems to me, is

9    that -- and I'll go read Adama, and someone will call -- give

10   us the cite to Aurora Shipping, we'll read that as well, but

11   the automatic stay applies.  None of you can go ahead and take

12   any action -- absent the lifting of the automatic stay, nobody

13   can take any action to perfect their liens.  You can't get

14   judgment.

15   On the other hand, it seemed to me 1523(a) means that

16   the foreign representatives can't avoid the attachment liens,

17   and that their remedy is to go to Denmark if they want a

18   proceeding in Denmark and try and get a -- you know, relief

19   from the Court in Denmark, or file a Chapter 11 here and have

20   the -- use the trustee's avoiding powers.

21   But I want to read Adama --

22   MR. SWEENEY:  Your Honor, if I might --

23   THE COURT:  Well, let me hear from Mr. Harwood.  Go

24   ahead.

25   MR. HARWOOD:  I agree, Your Honor.  It's -- because

1   Chapter 15 is new and the context of this is new, we really

2   don't -- this Court is dealing with it to a certain extent as a

3   matter of first impression, especially in respect of an

4   international bankruptcy involving a question of where these

5   creditors have to go back to Denmark or take their luck sitting

6   here.  I don't know what the answer is, Your Honor, unless it's

7   found in 540, 41 in terms of turnover, but that is -- that is

8   where it's -- 1523 reads.  That relief from 547 has to be under

9   a separate chapter.  Thank you.

10          MR. SWEENEY:  Your Honor, if I might?

11          THE COURT:  Are you finished, Mr. Harwood?

12          MR. HARWOOD:  I'm sorry?

13          THE COURT:  Are you finished?

14          MR. HARWOOD:  Yes, Your Honor, I am.

15          THE COURT:  Go ahead, Mr. Sweeney.

16          MR. SWEENEY:  Your Honor, I'm advised by the trustee

17  that in Denmark, the attachments are dissolved as a matter of

18  law.  It's not -- I have the Danish Bankruptcy Act here with

19  me, Your Honor.

20          THE COURT:  I don't have -- you know, go to the Court

21  in Denmark and get a, you know, a judgment in Denmark and, you

22  know, bring it here and I'll recognize it.  But you just can't

23  tell me that you want me -- you know, none of you briefed any

24  of this, okay?  You say you put it in a brief I've never seen.

25          MR. SWEENEY:  And there's an accompanying declaration,

1   Your Honor, that cites to the Bankruptcy Act in Denmark that we

2   also submitted.

3        THE COURT:  Well, the briefing from all of you was

4   inadequate on this.

5        MR. SWEENEY:  In addition, Your Honor, the -- you'll

6   see Point 3 in our brief, which again, I apologize, I don't

7   know how it didn't get to you -- is a citation to the Quenard

8   case (phonetic).  That's a Second Circuit decision.

9        There is one distinction that I'll admit in that this

10  was a post-petition attachment in Quenard.  But the Second

11  Circuit said that Rule B maritime attachments, and this was a

12  Swedish bankruptcy, can be dissolved by this Court here, by the

13  Court sitting in New York, as a matter of comity with the

14  Swedish Bankruptcy Court wherein the attachments would not have

15  been valid.

16       Now, we have the exact same situation here because the

17  Danish Court will not recognize any of these attachments.  And

18  that, again, arises as a matter of law.  In other words,

19  there's no judgment to be had there.  This is by operation of

20  the Danish Bankruptcy Act, which has been cited in our papers

21  in the declaration of the trustee.  We have a copy of the Act,

22  and we have the trustee here who can testify to that, Your

23  Honor.  And that's what we're seeking recognition --

24       THE COURT:  An issue you're raising for the first time

25  in a memorandum that you filed the day before the hearing that

1   I never saw -- that everybody -- has everybody had a chance --

2   you know, I'm --

3          MR. SWEENEY:  I filed it yesterday because the motion

4   was filed the day before.  The only opposition that was filed

5   was filed on Wednesday evening.  So we filed it here at three

6   o'clock yesterday afternoon, Your Honor.  It was our only

7   opportunity to file anything with the court, and that's exactly

8   what we did.

9          THE COURT:  Let me ask the creditors' counsel.

10         MR. TISDALE:  Judge, this is Thomas Tisdale.  I --

11         THE COURT:  Just wait, Mr. Tisdale.

12         MR. TISDALE:  -- certainly have not --

13         THE COURT:  Mr. Tisdale, just stop.

14         Do any of the creditors object to the recognition of

15   the Danish proceeding as a foreign main proceeding?

16     (No verbal response.)

17         THE COURT:  I hear no objection to that.  Mr. --

18         MR. HARWOOD:  No objection.

19         MR. SKOUFALOS:  No, Your Honor.

20         MR. TISDALE:  No, Your Honor.

21         THE COURT:  All right.  And the issue is the relief

22   that would follow now.  What I'm going to do, Mr. Sweeney, is

23   we're going to enter an order recognizing the Danish proceeding

24   as a foreign main proceeding, requiring -- I don't have the

25   language.  We didn't have a disk, either, from -- with your

20

1    proposed order.  Basically, I'm going to require that any funds

2    that are subject -- that purport to be subject to the

3    attachment remain in your -- in an escrow account with your

4    firm, and that I want further briefing from everybody.  We're

5    going to have another hearing.  I'm not going to do this on the

6    fly.

7              I'm going to give everybody a chance -- do you all

8    have Mr. Sweeney's brief that he filed yesterday?

9              MR. HARWOOD:  Yes, Your Honor.

10             THE COURT:  How much time do you want to file a brief

11   in response to Mr. Sweeney's brief?

12             MR. HARWOOD:  Your Honor, Jeremy Harwood.  I'm not

13   sure if Mr. Sweeney is planning on putting in a notice of

14   foreign laws.  That argument he just raised was not in his

15   brief.  It's one of comity as opposed to something else.  But

16   if he isn't --

17             THE COURT:  Well, I'm going to give -- let me -- it's

18   a fair point, Mr. Harwood.

19             Mr. Sweeney, if this is what you're going to argue,

20   okay, and you're asking the Court to take notice of foreign

21   law, I think the Federal Rules of Evidence -- Federal Rules of

22   Civil Procedure, Federal Rules of Evidence have procedures

23   about what you have to do to get me to recognize that foreign

24   law.

25             What I want you to do, Mr. Sweeney, is I want you to

21

1    work out a briefing schedule with the other counsel, rather

2    than doing it now.  The money is going to sit there safe in the

3    meantime.  Work out a schedule.  I want to make sure I have the

4    last brief that anybody files no less than three business days

5    before a hearing.  So you work out a schedule that will

6    accommodate everyone, not overly lengthy, but a reasonable

7    schedule that will give you each a chance.

8            You'll need to get a hearing date.  My courtroom

9    deputy is away.  We can get you a date.  So work out the dates

10   with other counsel for briefing the issue.  If you want me to

11   recognize Danish law, and if, as you say, the Danish law says

12   that these attachments are a nullity and that -- you also need

13   to brief the comity issue as to why I should recognize that

14   Danish law.

15           I mean, what does seem to me -- and I'll read Adama,

16   but it certainly seemed to me that in the context of a Chapter

17   15, which Adama was not appear to be a Chapter 15 --

18           MR. SWEENEY:  It was in the prior section, Your Honor,

19   the prior Code.

20           THE COURT:  -- that 1523(a), unless you have a

21   proceeding under a chapter other than 15, the trustee doesn't

22   have avoidance powers.

23           MR. SWEENEY:  Your Honor, if the Court's going to

24   grant recognition today --

25           THE COURT:  Yeah, I want to make sure -- I don't want

1    additional -- the effect of granting recognition today is going

2    to prevent anybody else from filing anything.

3             MR. SWEENEY:  Understood, Your Honor.  But if -- given

4    that there's recognition, now we would be free under 1523 to

5    file a -- that's a Chapter 11 proceeding.  Can we refer that to

6    Your Honor?

7             THE COURT:  It will come to me as a -- yeah.  It will

8    be listed as a related proceeding.

9             MR. SWEENEY:  Okay.  As a related matter?

10            And, also, Your Honor, there's just one --

11            THE COURT:  I'm not trying to get you to -- if you've

12   got an argument that under Danish law, which I should give

13   comity to, that the attachments are a nullity, that's fine.

14   I'm not ruling against you on the law.  I just didn't have any

15   of the briefs or any of these arguments.

16            MR. SWEENEY:  Point 3 in our brief addresses that

17   exact issue, Your Honor.  And there was -- in any event, and

18   there's Second Circuit authority there.  We will give the

19   notice of reliance on foreign law.  I thought that was almost

20   implicit given that we're asking to recognize a foreign

21   proceeding, but I'll give that notice, Your Honor.  That's no

22   problem.

23            THE COURT:  Well, you know, you asked me to recognize

24   the foreign proceeding under Chapter 15, and you filed all the

25   things that were required to be filed, and everybody had a

23

1    chance to object.  Now you're going beyond that and you're

2    dealing with, under Danish law, what's the effect of the

3    attachments that were obtained in New York previously, none of

4    which I've read because I didn't see them.

5          MR. SWEENEY:  Your Honor, one other, just a practical

6    issue, the trustee informs me that if we are to serve the order

7    on all parties, all creditors, can we confine that, as we have

8    to date, to those in the United States?  In other words, the

9    garnishee banks and the credit -- the Rule B creditors here?

10   Because once we have to notify all creditors worldwide, they're

11   going to get an order that they don't understand, and it just

12   creates a lot of confusion towards the --

13         THE COURT:  What does Chapter 15 -- who do they

14   require you to -- does it require you to serve?

15         MR. SWEENEY:  It doesn't specify.  It just says, all

16   the debtors.

17     (Pause.)

18         THE COURT:  Well, Mr. Sweeney, it seems to me you take

19   the risk because if you haven't served anyone -- you know, if

20   someone takes action and they haven't been served, I don't see

21   how they're going to be bound.

22         MR. SWEENEY:  Okay, Your Honor.

23         THE COURT:  But it's your risk.

24         MR. SWEENEY:  Okay.

25         THE COURT:  Do you have a disk with the order of

24

1   recognition?  You provided us a hard copy, but we didn't have a

2   disk.

3            MR. SWEENEY:  We can get you a disk today, Your Honor.

4            THE COURT:  Anybody else want to be heard?

5       (No verbal response.)

6            THE COURT:  Mr. Sweeney, look at 1514(a) just on the

7   issue of notice, notification, 1514.  Doesn't this require you

8   to give notice to all creditors, foreign as well as U.S.?

9            MR. SWEENEY:  It would seem so, Your Honor.

10           THE COURT:  So comply with 1514.

11           MR. SWEENEY:  Will do.

12           THE COURT:  I can't -- that's what the Code says.  I

13  mean, I -- you know, if you've got some authority for doing

14  otherwise, but looking at 1514, it seems to require that you

15  serve creditors that do not have addresses in the United

16  States.

17           All right.  As I say, work out a schedule and you can

18  get a date from one of my law clerks today.  If you don't have

19  it worked out yet, you can contact chambers next week and get a

20  date for -- a mutually convenient date for the hearing.

21           All right.  We're adjourned.

22      (Proceedings concluded at 10:39 a.m.)

23                              * * * * *

24

25

<u>CERTIFICATION</u>

        I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____    February 24, 2009

Cathryn Lynch, NJ Cert. No. 565

Certified Court Transcriptionist

Rand Reporting & Transcription, LLC