UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In re:                                                      :
                                                            :    CHAPTER 15
ATLAS SHIPPING A/S, A Danish Corporation,                   :    Case No.: 09-10314
                                                            :
    A Bankrupt in a Foreign Proceeding                      :
                                                            :
------------------------------------------------------------X
In re:                                                      :
                                                            :    CHAPTER 15
ATLAS BULK SHIPPING AS, A Danish Corporation,               :    Case No.: 09-10315
                                                            :
    A Bankrupt in a Foreign Proceeding                      :
                                                            :
------------------------------------------------------------X

## DECLARATION OF TRUSTEE LISA BO LARSEN

Pursuant to 28 U.S.C. § 1746, Lisa Bo Larsen declares as follows:

1. I am over the age of 18 and I make this statement in support of the Chapter 15 bankruptcy petitions of Atlas Shipping A/S, and Atlas Bulk Shipping AS.

2. The Debtors are corporations organized and existing under the law of Denmark. Atlas Shipping A/S has a registered office at Sundkaj 11, 2100 Kobenhavn, Denmark. Atlas Bulk Shipping AS has a registered office at Sundkaj 11, 2100 Kobenhavn, Denmark.

3. On December 17, 2008, the Debtors filed voluntary petitions in bankruptcy in Denmark by filing the petitions with the Bankruptcy Division of Maritime and Commercial Court in Copenhagen, the Danish court responsible for such matters. Bankruptcy was declared on December 18, 2008.

4. Michael Ziegler, attorney-at-law of Plesner Law Firm, and myself, Lisa Bo Larsen, attorney-at-law of Kromann Reumert, were appointed the Trustees in Bankruptcy of Atlas Shipping A/S and Atlas Bulk Shipping AS.

5. I have been practicing law in Denmark for twelve (12) years. I am specializing in bankruptcy and creditors' rights and I am head of the insolvency law department (20 lawyers) at Kromann Reumert.

6. Under Danish bankruptcy law, the Bankruptcy Division of Maritime and Commercial Court in Denmark is a court of competent jurisdiction for the Atlas Shipping A/S and Atlas Bulk Shipping AS bankruptcies because of Atlas' place of business, headquartered in Copenhagen.

7. Under the Danish Bankruptcy Act, specifically Chapter 4, Paragraph 31, subsection 3, attachments made prior to the petition for bankruptcy automatically lapses as of the bankruptcy date. A certified copy of this provision, with a certified English translation is attached hereto as Exhibit A.

8. The language of Chapter 4, Paragraph 31, subsection 3 of the Danish Bankruptcy Act clearly and unequivocally states "Any attachments made before the bankruptcy shall lapse." Consequently, the Danish bankruptcy proceeding will not recognize any of the Rule B attachments made before the bankruptcy.

9. The Danish bankruptcy court does not issue any order dismissing, voiding or otherwise vacating any such attachments made prior to the bankruptcy because as a matter of law these attachments cease to exist immediately upon the petitioning for bankruptcy. Accordingly, Danish garnishee institutions need only be given notice of the bankruptcy petition itself to release any funds they may have garnished to the Trustee.

10. The language of Chapter 4, Paragraph 31, subsection 1, states, "Upon pronouncement of adjudication order execution by way of distress or attachment shall not be levied against the assets comprised by the bankruptcy." Under Danish law attachments against the Debtors could

2

not have been made once bankruptcy was declared. Accordingly, the Danish bankruptcy proceeding will not recognize any of the Rule B attachments made after the bankruptcy.

11. Therefore, as a matter of Danish law, all Rule B attachments would be vacated, dissolved and/or given no legal force, with no special creditor priority status granted. Moreover, said provisions of the Danish Bankruptcy Act have extra-territorial effect and apply to all attached assets of the Estate regardless of where they may be located. Thus, if any unusual priorities were to be created by maintaining such attachments/garnishments, it will disrupt the ordinary operation of Danish bankruptcy law, and have adverse effects on the adjudication and orderly administration of the Estate in Denmark and will hinder the efficient determination and dispensation of assets.

12. In my opinion, a Danish court would grant and extend comity to U.S. bankruptcy proceedings insofar as those proceedings involved or affected Danish interests.

13. Under applicable Danish bankruptcy law, all assets of the Debtor have vested in the Trustees, and there is a stay of proceedings in force. All creditors of the Debtor are treated equally in the sense that non-Danish creditors are accorded the same priority and otherwise provided with the same treatment as Danish creditors.

14. I further note that there is no danger of prejudice to any U.S. creditor as none of the attaching plaintiffs in the subject Rule B attachment actions are U.S. entities.

15. Due to these attachment actions, and by an order of this Court, dated January 27, 2009, over four millions dollars are currently being held in the attorney trust account of Nicoletti Hornig & Sweeney, U.S. counsel for the Trustee.

16. I have reviewed § 1520 and § 362 of the U.S. Bankruptcy Code. Under the automatic stay, these attachments cannot be perfected, executed, or otherwise reduced to an executable

judgment. Therefore, these assets will remain inaccessible in the attorney trust account for an indeterminate time, preventing the tabulation and fair dispensation to all creditors under Danish Bankruptcy law.

17. I have reviewed § 1507 of the U.S. Bankruptcy Code entitled "Additional assistance". I can assure this Court that any such additional assistance will serve to promote and facilitate the five objectives listed at § 1507 (b)(1) through (5).

18. The ultimate goal of the Trustees is to ensure an orderly administration of the financial affairs of the Debtors and to maximize the value of the Debtor's assets to be distributed to all creditors, under the auspices of the applicable Danish law, and with the aid of the Court as requested herein. The Trustee believes that granting the relief sought in the Petition in this proceeding will best assure (and may be the only way to assure), the opportunity to investigate, identify and locate all assets of the Debtors.

IN WITNESS WHEREOF, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: Copenhagen, Denmark
_3/3_____, 2009

Lisa Bo Larsen, Trustee
Attorney-At-Law
Kromann Reumert
Sundkrogskade 5
2100 Copenhagen

C:\Documents and Settings\lbl\Local Settings\Temporary Internet Files\OLK5D\Declaration of Trustee_(February 22 2009)--DRAFT (2).doc

# EXHIBIT A

§ 26. Kan afgørelse om konkurs ikke straks træffes, kan skifteretten efter anmodning fra en fordringshaver fratage skyldneren rådighed over ejendele, som kan inddrages under eventuel konkursbehandling, hvis
1) skyldneren samtykker i fratagelsen,
2) skyldneren uden lovligt forfald udebliver fra møde i skifteretten,
3) skyldneren må antages at holde sig skjult, eller
4) der er fare for, at skyldneren vil råde over ejendelene til skade for fordringshaverne.

Stk. 2. Skifteretten træffer de fornødne foranstaltninger til at hindre uberettiget råden. Begrænsninger i skyldnerens rådighed kan gøres gældende over for tredjemand, hvis denne kendte eller burde kende begrænsningerne.

Stk. 3. Foranstaltninger, der ikke kan opsættes, foretages af skifteretten eller den, som skifteretten udpeger dertil.

Stk. 4. Rådighedsfratagelsen ophører, hvis konkursbegæringen tilbagekaldes eller ikke tages til følge, eller hvis skifteretten bestemmer det.

§ 27. Kan konkursboets midler ikke dække de med konkursbehandlingen forbundne omkostninger, hæfter den eller de, der har begæret konkurs, solidarisk for det manglende beløb indbyrdes med lige store andele.

Stk. 2. Afsigelse af konkursdekret er betinget af sikkerhedsstillelse for de i stk. 1 nævnte omkostninger, medmindre disse utvivlsomt kan dækkes af konkursboets midler. Hvor særlige hensyn til skyldneren eller en fordringshaver taler herfor, kan skifteretten dog undlade at kræve sikkerhedsstillelse. I så fald betales omkostninger, der ikke kan dækkes af skyldnerens midler, af statskassen.

Stk. 3. Er der på fristdagen tinglyst virksomhedspant, jf. tinglysningslovens § 47 c, i skyldnerens ejendom, hæfter den eller disse panthavere solidarisk med 50.000 kr. Hæftelsen er subsidiær i forhold til sikkerhedsstillelsen efter stk. 2. Panthaverne hæfter indbyrdes i forhold til pantets værdi. Skifteretten kan kræve sikkerhedsstillelse for hæftelsen efter 1. pkt.

Stk. 4. Er der ikke tinglyst virksomhedspant på fristdagen, påhviler forpligtelserne efter stk. 3 den eller de panthavere, der har aflyst et virksomhedspant senere end 2 år før fristdagen, medmindre aflysningen under hensyn til omstændighederne fremtrådte som ordinær.

§ 28. Har en fordringshaver begæret konkurs, uden at betingelserne for konkurs var opfyldt, og kunne dette være undgået ved fornøden agtpågivenhed, skal han betale skyldneren erstatning for tab og godtgørelse for tort uden hensyn til, om konkurs er indtrådt.

Stk. 2. Viser det sig, at fordringen ikke bestod, indtræder ansvar efter stk. 1, selv om intet kan bebrejdes den, der begærede konkurs.

Stk. 3. Under særlige omstændigheder kan skifteretten bestemme, at en fordringshavers begæring om konkurs kun kan tages til følge, hvis der stilles en af skifteretten fastsat sikkerhed for eventuelt erstatningsansvar efter stk. 1 og 2.

## Kap. 4. Konkursens virkninger

§ 29. Ved afsigelsen af konkursdekretet mister skyldneren retten til at overdrage eller opgive sine ejendele, modtage betaling og andre ydelser, modtage opsigelser, reklamationer og lignende erklæringer, stifte forpligtelser eller på anden måde råde over sin formue med virkning for boet.

§ 30. Efter udløbet af det døgn, hvori bekendtgørelse i Statstidende om konkursen har fundet sted, har skyldnerens urådighed virkning over for enhver. Indtil dette tidspunkt har urådigheden virkning over for den, som kendte eller burde kende konkursen.

Stk. 2. Bestemmelserne i stk. 1 gælder kun, hvis ikke andet følger af reglerne om værdipapirer og om tinglysning eller anden registrering.

§ 31. Efter konkursdekretets afsigelse kan udlæg eller arrest ikke foretages i den af konkursen omfattede formue.

Stk. 2. Den, som har tilbageholdsret i boets ejendele, indtil et bestemt beløb er betalt, kan uanset konkursen foretage udlæg i de tilbageholdte ejendele og søge fyldestgørelse deri. Udlæg kan dog kun gøres, hvis fordringen er fastslået ved skifterettens dom eller på anden for boet bindende måde og boet trods opfordring fremsat mindst to uger inden udlæggets foretagelse ikke har betalt beløbet.

Stk. 3. Arrest foretaget inden konkursen bortfalder.

Stk. 4. Brugspanteret efter retsplejelovens kapitel 54 kan ikke udøves efter konkursdekretets afsigelse.

## Kap. 5. Konkursmassen

§ 32. Konkursen omfatter skyldnerens formue ved afsigelsen af konkursdekretet, og hvad der under konkursen tilfalder ham.

§ 33. Skyldnerens indtægter ved egen virksomhed under konkursen, og hvad der træder i stedet derfor, indgår ikke i konkursmassen.

§ 34. Arv, der tilfalder skyldneren, indgår i konkursmassen, medmindre andet følger af arveladers gyldige bestemmelse, eller konkursboet afstår fra arven.

Stk. 2. Indsigelse mod et testamente, der begrænser skyldnerens arv, kan ikke rejses af konkursboet.

Stk. 3. Skyldneren kan give samtykke til, at arveladerens efterlevende ægtefælle hensidder i uskiftet bo.

§ 35. Indgår under konkursen arv i konkursboet, kan dødsboet med konkursboets tiltrædelse skiftes privat.

Stk. 2. Krav mod konkursboet i medfor af §§ 27 og 28 i lov om skifte af dødsboer er massekrav.

§ 36. Aktiver, hvori udlæg for skyldnerens gæld ikke kan foretages, indgår kun i konkursmassen, når dette særligt er bestemt.

§ 37. Lejemål om hus eller husrum, der tjener til bolig for skyldneren, kan inddrages under boet, når dette efter skifterettens skøn findes rimeligt begrundet i boets økonomiske interesse i inddragelsen.

Stk. 2. Om opsigelse af lejemål gælder reglerne i kapitel 7.

## Kap. 6. Krav mod boet

§ 38. Konkursmassen anvendes til fyldestgørelse af dem, der ved konkursdekretets afsigelse havde krav mod skyldneren, jf. dog § 30, samt af krav på indkomstskat i henhold til selskabsskatteloven og fondsbeskatningsloven vedrørende indkomstår, der udløber efter konkursdekretets afsigelse.

§ 39. Et regreskrav, som er opstået ved indfrielse af skyldnerens forpligtelse, anses for opstået samtidig med denne forpligtelse.

§ 40. Alle krav mod skyldneren, som skal fyldestgøres af konkursmassen, kan af boet fordres omsat til penge.

Stk. 2. Fordringer i fremmed mønt omsættes til dansk mønt efter kursen den dag, da konkursdekretet blev afsagt.

§ 41. Boet kan erlægge en ydelse eller foretage udlodning, selv om skyldneren endnu ikke var berettiget til at frigøre sig ved erlæggelse af ydelsen.

§ 42. Den, som på fristdagen havde en fordring på skyldneren, kan, selv om fordringen ikke var forfalden, benytte den til modregning med dens fulde beløb over for en fordring, som da tilkom skyldneren, medmindre modregning var udelukket på grund af fordringernes beskaffenhed.

Stk. 2. Modregning mellem fordringer, som begge er erhvervet efter fristdagen, men inden konkursdekretets afsigelse, kan ske efter reglerne i stk. 1.

CERTIFIED TRANSLATION 

---

[...]

31.-(1) Upon pronouncement of adjudication order execution by way of distress or attachment shall not be levied against the assets comprised by the bankruptcy.

(2) A holder of a lien upon the property of the estate until payment of a certain amount may irrespective of the bankruptcy levy execution upon the assets retained to obtain satisfaction of his claim. Execution may only be levied, however, where the claim has been established by bankruptcy court order or in a similar manner, binding on the estate, and it is further required that the estate has failed to pay the amount in disregard of requests to effect such payment put forward not less than two weeks prior to the levying of execution.

(3) Any attachments made before the bankruptcy shall lapse.

[...]

I, the undersigned Robert Hoffmann-Rasmussen, authorized translator and interpreter of the English language, hereby certify the preceding text to be a true and faithful translation of the corresponding part of the attached Danish text (s. 31(1)-(3) of the Danish Bankruptcy Act).

In Witness Whereof I have hereunto set my hand and affixed my Seal of Office this 27th day of February 2009.

Robert Hoffmann-Rasmussen